Terrence J. Coleman   (State Bar No. 172183)
Michael J. Quirk     (State Bar No. 283351)
PILLSBURY & COLEMAN, LLP
The Transamerica Pyramid
600 Montgomery St., 31st Floor
San Francisco, California 94111
Telephone: (415) 433-8000
Facsimile:  (415) 433-4816
Email: tcoleman@pillsburycoleman.com
       mquirk@pillsburycoleman.com

Attorneys for Plaintiff
CHARLES DIMRY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES DIMRY,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>BERT BELL/PETE ROZELLE NFL PLAYER RETIREMENT PLAN; THE NFL PLAYER SUPPLEMENTAL DISABILITY PLAN; and DOES 1-10, inclusive,<br><br>　　　　　Defendants. | Case No.<br><br>**COMPLAINT FOR RECOVERY OF EMPLOYEE BENEFITS, EQUITABLE RELIEF, AND CIVIL PENALTIES** |

Plaintiff alleges on information and belief as follows:

### JURISDICTION AND VENUE

1.   This case arises under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001, *et seq.* ("ERISA"), over which this Court possesses original jurisdiction pursuant to 29 U.S.C. § 1132(e) and 28 U.S.C. § 1131.

2.   Venue is proper in this District because Defendants breached the terms of the applicable benefit plan in this District. 29 U.S.C. § 1132(e)(2).

///

///

## THE PARTIES

3. Plaintiff Charles Dimry ("Plaintiff") is an individual who is currently, and at all relevant times was, residing in the State of California.

4. Defendants are The Bert Bell/Pete Rozelle NFL Player Retirement Plan (the "Retirement Plan") and The NFL Player Supplemental Disability Plan (the "Supplemental Plan") (collectively, the named defendants are referred to as the "NFL Plan" or the "Plan"). The Plan is an employee benefit plan within the meaning of 29 U.S.C. § 1002, created for the benefit of the employees of member teams of the National Football League ("NFL"). The Supplemental Plan was created for the purpose of paying disability benefits in excess of the limits of the Retirement Plan.

5. Plaintiff is ignorant of the true names and capacities of defendants sued herein as DOES 1 through 10, inclusive, and therefore sues these defendants by said fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when they have been ascertained.

## FACTUAL ALLEGATIONS

6. Plaintiff is a former professional football player in the NFL, playing for the Atlanta Falcons, Denver Broncos, Tampa Bay Buccaneers, Philadelphia Eagles, and San Diego Chargers during the years of 1988 - 2000. Plaintiff primarily played as a cornerback, a member of the defensive backfield, covering receivers and defending against offensive plays.

7. Plaintiff has a long history of football injuries including multiple fractures, bruises, strains, tears, and concussions. However, Plaintiff's first major neck injury occurred in 1997. While making a tackle, Plaintiff's head was struck from the side and he experienced radicular symptoms for approximately three weeks. His neck was reinjured approximately two years later by a similar strike during a tackle. This time, his left side was affected more than the right, and over time his symptoms worsened. An MRI revealed a broad-based C5-6 disc protrusion abutting the nerve notes bilateraly.

8. Plaintiff underwent his first cervical fusion surgery in 2000. After the surgery, Plaintiff continued to have neck pain.

9. Under the Plan, a player may be entitled to a monthly Line of Duty ("LOD") disability benefit if that player incurs a "substantial disablement arising out of NFL football activities." The Plan also provides a separate Total and Permanent ("T&P") disability benefit, which is payable where a

COMPLAINT FOR RECOVERY OF EMPLOYEE BENEFITS, EQUITABLE RELIEF, AND CIVIL PENALTIES

former player "has become totally disabled to the extent that he is substantially prevented from or substantially unable to engage in any occupation or employment for remuneration or profit . . . and [] that such condition is permanent." A disability is considered "permanent" if "it has persisted or is expected to persist for at least twelve months from the date of its occurrence, excluding any reasonably possible recovery period." A Player may apply for both LOD and T&P benefits, or for either benefit separately.

10. Plaintiff received coverage under the Plan as a "participant" as defined by 29 U.S.C. § 1002(7).

11. At all material times herein, Plaintiff complied with all the material provisions pertaining to the Plan or compliance was waived by Defendants, or both.

12. On July 30, 2008, Plaintiff applied for LOD disability benefits based on his ongoing neck pain stemming from his injuries sustained in the NFL, and was determined by the Plan to have suffered a substantial disablement. Benefits were approved and instated effective October 1, 2008.

13. In 2010, Plaintiff began to experience progressively worse pain and numbness of the left arm, forearm, and fingers, and worsening lower back pain. He also began experiencing increasing knee pain. Plaintiff was unable to stand, sit for extended periods, or lift. In June 2011, Plaintiff underwent a two-level fusion, removing the original C5-6 plate and extending the initial fusion at C5-6 to include C6-7. Following the surgery, Plaintiff further reduced his hours as a training director at Strategic Sports Ventures, and eventually ceased all work entirely.

14. On June 14, 2011, Plaintiff submitted his first application for T&P benefits based on his worsening condition. The Plan denied his application on September 6, 2011. Plaintiff appealed the denial on November 8, 2011, and the Plan denied his appeal May 10, 2012.

15. On December 10, 2014, Plaintiff submitted a second application for T&P benefits. With his second application, Plaintiff submitted additional and overwhelming evidence establishing his T&P disability including supportive medical reports from no less than six doctors and a functional capacity report. On February 5, 2015, the Plan denied Plaintiff's application based on the report of a Plan physician.

///

16. On June 26, 2015, Plaintiff made proper written requests to the Plan for documents to which he was entitled under 29 U.S.C. §1024(b)(4) and other relevant sections of ERISA, including but not limited to 29 C.F.R. § 2560.503-1(h)(2)(iii), (m)(8)(ii). To date, documents including training manuals, regulations, procedures and guidelines, communications, and internal plan communications relied upon in making benefit determinations have not been provided to Plaintiff.

17. Plaintiff appealed the Plan's denial on August 3, 2015.

18. After receiving Plaintiff's August 3, 2015 appeal, the Plan scheduled a "neutral physician medical examination" in San Francisco at the office of a Plan physician, James Chen, M.D.

19. Pursuant to a uniform practice employed in all NFL disability claims, the Plan did not provide Dr. Chen with a definition of T&P disability, nor did it provide relevant vocational information. Dr. Chen, like all other Plan physicians, has no vocational training. In spite of these material omissions, the Plan uniformly defers to its "neutral" physicians rather than exercising its own discretion as required by the Plan's written terms and without regard to the evaluations, opinions and conclusions of Plaintiff's treating physicians, all of whom fully support Plaintiff's disability.

20. With no relevant vocational information or training, Dr. Chen improperly provided his opinion that Plaintiff "is not totally disabled . . . he could do desk or sedentary work." The Plan adopted Dr. Chen's untrained opinion wholesale without exercising any discretion at all, and in wholesale disregard of the evaluations, opinions and conclusions of Plaintiff's treating physicians.

21. The Plan's actions are contrary to the written terms of the Plan, and its conclusions have no reliable evidentiary support. In affirming its prior denial of benefits, the Plan ignored the definition of T&P disability. The Plan's actions are contrary to the reports and assessments of the doctors who have evaluated and treated Plaintiff. The Plan's determination denied Plaintiff due process of law.

22. On December 2, 2015, the Plan affirmed its prior denial of T&P benefits based on the report of Dr. Chen.

23. The Plan's December 2, 2015 denial is the Plan's "final decision on review within the meaning of [ERISA]," and thus Plaintiff has exhausted all necessary pre-suit remedies available to him.

///

24. As a direct and proximate result of the aforementioned acts of Defendants, and each of them, Plaintiff suffered damages as outlined below.

25. As a result of the actions of Defendants, and each of them, Plaintiff has been improperly denied T&P benefits, together with interest thereon and has suffered further and severe economic hardship and emotional distress, whereas the Plan wrongfully financially benefitted from denying Plaintiff's T&P claim.

26. As a further result of the actions of Defendants, and each of them, Plaintiff has been required to engage the services of legal counsel for the purpose of obtaining benefits.

## FIRST CAUSE OF ACTION

### Recovery Of Employee Benefits: T&P Benefits
### (Against Defendants and DOES 1-10; 29 U.S.C. § 1132(a)(1)(B))

27. Plaintiff realleges and incorporates by reference herein Paragraphs 1 through 26 of this Complaint as though fully set forth herein.

28. Plaintiff has exhausted his remedies, as described above, and otherwise satisfied all prerequisites to filing this action.

29. At all material times herein, Plaintiff has complied with all the material provisions pertaining to the Plan, and/or compliance has been waived or Defendants are estopped from asserting non-compliance.

30. While the Plan was in full force and effect, Plaintiff became and remains totally disabled and entitled to receive T&P benefits under the Plan.

31. Contrary to the evidence and arguments presented to it, Defendants unlawfully denied Plaintiff's claim for T&P disability benefits, and have refused and continue to refuse to make T&P disability payments to Plaintiff in the appropriate amount due.

32. Defendants' refusal to instate Plaintiff's T&P disability benefits violates the terms of the Plan and applicable ERISA regulations, and Defendants' actions constitute an abuse of discretion. At all material times herein, Defendants, and each of them, failed and refused to honor the Plan. Defendants are therefore liable for all benefits due under the Plan.

///

33. As a proximate result of Defendants' actions, Plaintiff has been deprived of his T&P disability benefits to which he was and is entitled, and has suffered damages as set forth above in paragraphs 21-26.

## SECOND CAUSE OF ACTION

### Equitable Relief
### (Against Defendants and DOES 1-10; 29 U.S.C. §1132(a)(3))

34. Plaintiff realleges and incorporates by reference herein Paragraphs 1 through 33 of this Complaint as though fully set forth herein.

35. At all material times herein, Defendants, and each of them, were fiduciaries with respect to their exercise of authority over the management of the Plan, disposition of Plan assets, and administration of the Plan.

36. Plaintiff asserts against Defendants a breach of fiduciary duty claim, both as an individual Plan participant and on behalf of all other the participants and beneficiaries of the Plan.

37. Plaintiff asserts that a claim for benefits due under the Plan does not provide him with an adequate remedy at law in light of the Plan's continuing course of conduct in violating the terms of the Plan and applicable law as described below.

38. Defendants, and each of them, were obliged to discharge their duties solely in the interests of beneficiaries and participants for the exclusive purpose of providing beneficiaries and participants with all benefits due, defraying reasonable expenses of the Plan, using all prudent skill and diligence in accordance with the documents and instruments governing the Plan.

39. At all material times herein, Defendants, and each of them, violated these duties by, *inter alia,* the following:

    A.    Consciously, unreasonably and intentionally and without justification applying a uniform practice in all NFL disability claims whereby the Plan uniformly defers to its "neutral" physicians rather than exercising its own discretion as required by the Plan's written terms and rather than giving any weight to the evaluations, opinions and conclusions of Plaintiff's treating physicians;

///

B. Consciously, unreasonably and intentionally and without justification withholding relevant documents from Plan physicians including but not limited to vocational information.

C. Consciously, unreasonably and intentionally and without justification selecting Plan physicians that have no vocational training.

D. Consciously and unreasonably delaying the decision concerning Plaintiff's claim, and related claims and/or similar claims, for disability benefits;

E. Consciously and unreasonably failing to investigate all bases upon which to pay and honor Plaintiff's claim, and related claims and/or similar claims, for T&P benefits and consciously and unreasonably failing to investigate all bases to support disability, fairly and in good faith and refusing to give Plaintiff's interests or the interests of the Plan at least as much consideration as they gave their own;

F. Consciously and unreasonably asserting improper bases for denying full payment of Plaintiff's claim, and related claims and/or similar claims, for T&P disability benefits;

G. Consciously and unreasonably failing to adopt and implement reasonable or proper standards applicable to the prompt and fair investigation, processing and adjudication of Plaintiff's claim, and related claims and/or similar claims, under the Plan;

H. Consciously and unreasonably interpreting the Plan in a manner designed to deny and minimize benefits and in a manner which thwarts the reasonable expectations of the Plan's beneficiaries and participants in order to maximize its own profits and minimize the benefits it pays claimants;

I. Consciously and unreasonably refusing to pay Plaintiff's claim, and related claims and/or similar claims, with the knowledge that Plaintiff's claim and similar claims are payable and with the intent of boosting profits at Plaintiff's and other claimants' expense;

J.    Consciously and unreasonably failing to follow the terms of the Plan and applicable regulations governing the administration of claims, the review of denied claims, and required production of relevant documents; and

K.    Consciously and unreasonably engaging in a selective review of the evidence presented in an effort to minimize the evidence supporting the continuation of benefits while focusing exclusively on evidence supporting the termination of benefits.

Plaintiff seeks appropriate equitable relief from the Defendants, and each of them, including an order by this Court that Defendant disgorge profits on withheld benefits, and that Plaintiff be placed in the position he would have been in had he been paid the full amount of benefits to which he is entitled, including, without limitation, make-whole relief, interest, attorneys fees and other losses resulting from Defendants' breach.

### THIRD CAUSE OF ACTION

### Failure to Produce Documents
(Against Defendants; 29 U.S.C. § 1024(b)(4))

40.    Plaintiff realleges and incorporates by reference herein Paragraphs 1 through 39 of this Complaint as though fully set forth herein.

41.    Including but not limited to as early as June 26, 2015, Plaintiff made proper written requests to the Plan for documents to which he was entitled under 29 U.S.C. §1024(b)(4) and other relevant sections of ERISA, including but not limited to 29 C.F.R. § 2560.503-1(h)(2)(iii), (m)(8)(ii). These documents, including training manuals, regulations, procedures and guidelines, communications, and internal plan communications relied upon in making benefit determinations were not provided in response to Plaintiff's request. The Plan's failure to provide said documents within thirty (30) days of Plaintiff's original requests entitles Plaintiff to civil penalties of $110 per day per document, as described in 29 U.S.C. §1132(c)(1) and as set forth in 29 C.F.R. 2575.502 c-1. Said penalties begin on the thirty-first (31st) day following the date the Plan received Plaintiff's document requests.

///

42. It has been more than the 30 days allowed under ERISA for Plan to respond to Plaintiff's document requests.

43. As a direct and proximate result of the foregoing actions and omissions, the Plan breached its obligations and duties under ERISA as the plan administrator and is liable for civil penalties under ERISA as set forth above.

WHEREFORE, Plaintiff prays as follows:

1. For a determination that Plaintiff is entitled to receive benefits under the Plan and an injunction mandating the payment of benefits to Plaintiff for the maximum benefit period under the Plan;
2. For damages according to proof;
3. For general damages according to proof;
4. For attorneys' fees and costs of suit incurred herein pursuant to 29 U.S.C. § 1132(g) and ERISA § 502(g);
5. For prejudgment interest on all LTD benefits that have accrued prior to the judgment;
6. For equitable and injunctive relief as set forth above, including disgorgement of profits, surcharge, and appropriate make-whole relief;
7. Civil penalties of $110 per day per document withheld, as described in 29 U.S.C. §1132(c)(1) and as set forth in 29 C.F.R. 2575.502 c-1; and
8. For such other and further relief as the Court may find appropriate.

Dated: March 23, 2016

PILLSBURY & COLEMAN, LLP

By: _____
Terrence J. Coleman
Michael J. Quirk
Attorneys for Plaintiff
CHARLES DIMRY